## LOUISVILLE, EVANSVILLE & ST. LOUIS RAILWAY CO.
## v.
## JAMES CHALCRAFT.

1. COMPENSATION FOR DAMAGE TO LAND NOT TAKEN.—Where a railroad crosses a farm, the inconvenience in operating a farm thus divided is proper to be considered in fixing the damages to the land not taken.

2. NECESSARY FARM CROSSINGS—CIRCUMSTANCES TO BE CONSIDERED.—In considering whether a proposed crossing is a necessary farm crossing within the meaning of the statute, it is not enough to show that the crossing contended for would add somewhat to the convenience of the land owner, but the safety and convenience of the corporation in the operation of its trains and in the care and use of its right of way, should be regarded and the final rights of both parties kept in view, so as to furnish reasonable safety and security to each without the imposition of an unreasonable burden or duty upon either. Considering the special circumstances of this case, the court is of opinion that the proposed bridge is not a necessary farm crossing within the meaning of the statute.

APPEAL from the Circuit Court of Edwards county; the Hon. C. S. CONGER, Judge, presiding. Opinion filed April 18, 1884.

This was a bill in chancery filed by the appellant against the appellee in the Circuit Court of Edwards county. The bill alleged that the complainant therein was a railroad corporation organized under the laws of Illinois; that in constructing its railroad it passed over the S. ¼ Sec. 17, T. 2 S., R. 10 E., in Edwards county, owned by James Chalcraft, appellee; that appellant condemned the right of way through said land and paid $260 for the land actually taken, and $1,300 for damages to remainder, and took possession and located the railroad across the northwest corner of said land, so as to leave seven acres on the north side of the railroad (which runs in a

general east and west course but curves to the south where it crosses said land); said seven acres are bounded on the north and west by public highways and have situate thereon the barn, etc., of appellee, and that directly across the railroad in a southeast course from the barn is the dwelling of Chalcraft, with the yards, garden, etc., surrounding the same and abutting upon " the right of way" of appellant, while the orchard lies east of the house and the back of the farm south and west of the house with a lane running north and south on the west side of the house, extending from a good, safe, private farm crossing over said railroad track south into said farm, as shown by plat thereof; that said railroad extends a distance of 2,300 feet upon said land and passes between the house and barn of Chalcraft; that it was necessary to make a cut for 1,000 feet through said land, varying from two to ten feet deep, and which cut extends between the house and barn; that after constructing said railroad, appellant put in all necessary farm crossings for the use of said Chalcraft, in addition to two public crossings over said railroad at the eastern and western extremities of the crossings into and out of said lands by said railroad. And to be more explicit, there are within the 2,300 feet, nine crossings, two public ones, two foot crossings (one at level grade and one with steps on the sides of the cut) directly between the house and barn, and five safe, convenient private farm crossings for teams, all for the convenience of said Chalcraft, and are more particularly described as follows, to wit:

The bill then sets out a particular description in detail of each crossing, alleging that they are all in good condition and that no other crossings are necessary; but that the defendant not being satisfied with the provision thus made for him, has demanded that a bridge be built for his own use over the cut opposite his house; and that complainant having declined to comply, the defendant has begun the construction of the bridge, intending to compel complainant to pay twice the value thereof, under the statute; that the proposed bridge, if built of the height indicated by the embankment already made by defendant, will be so low as to endanger lives of persons employed

upon the trains of complainant, and that it will unreasonably interfere with the view of engineers and others in the service upon such trains, endangering the lives of passengers, etc, and prays for an injunction to prevent the construction of said bridge.

The cause was heard upon bill, answer (denying the material allegations of the bill as to the character and sufficiency of the crossings already built, and of the proposed bridge, etc.), replication and proofs; and a decree was entered finding:

That a farm crossing was necessary across the railroad at the point designated in complainant's bill, over the curve cut on defendant's land, where embankments have been thrown up by defendant. The court finds that the most practical method is an over-head crossing or bridge; but to insure safety, that it must be $19\frac{1}{2}$ feet high in the clear, and that a bridge $16\frac{1}{2}$ feet high is unsafe.

It was therefore ordered that the injunction be modified so as to allow the building of a bridge $19\frac{1}{2}$ feet high, but made perpetual as to one $16\frac{1}{2}$ feet high, as proposed to be made by the defendant, and each party pay one half the cost.

To which the complainant excepted and prayed an appeal, etc.

Mr. H. J. STRAWN, and Messrs. PATTON & WATSON, for appellant; cited Ellsworth v. Central R. R. Co., 34 N. J. Law, 93; C. & I. R. R. Co. v. Hopkins, 90 Ill. 316.

Mr. W. F. FOSTER and Mr. J. M. CAMPBELL, for appellee.

WALL, P. J. The only question to be considered is one of fact, or perhaps more accurately speaking, it is a mixed question of law and fact as to whether the proposed bridge is a necessary farm crossing within the meaning of the statute, which provides that railroad corporations shall construct farm crossings when and where the same may be necessary for the use of the proprietors of the adjoining lands. This statute also provides that when the railroad corporation refuses to make such necessary crossings the owner of the lands may, after

giving proper notice to the corporation, build the same, and recover twice the value thereof from the corporation, with interest at the rate of one per cent. per month from the time the same was built, with costs, in any court of competent jurisdiction. R. S., Ch. 114, §§ 48–51–52.

The building and operations of a railroad across a tract of land may, and necessarily does, damage the owner in respect to the land actually taken as well as in respect to that not taken. The latter element is often more considerable than the former, and of course must vary according to the circumstances of the case.

Before the corporation can appropriate the property, these damages must be ascertained and paid in the manner proposed by law.

Perhaps the most important feature of damage to land not taken is the inconvenience and danger of operating a farm where it is divided by the railroad, as shown in the present case. Here, as appears by the bill and answer, the right of way was duly condemned and the value of the land taken estimated at $260, while the damages to the land not taken were estimated at $1,300, the latter item being five times that of the former.

Notwithstanding this allowance, which, we are to presume, was ample, as it has been so adjudged in the mode provided by law, it is still incumbent upon the railroad corporation to build and maintain farm crossings for the use of the land owner when and where the same may become necessary. It is shown that the corporation did build seven crossings within a distance of less than half a mile, and that, in addition to these, there are two crossings over the public highway, which pass along the north and west sides of the land. Two of these seven crossings are under grade, thus furnishing the safest possible way for the passage of stock from one part of the farm to the other.

It is, however, insisted that the company must build a bridge between the dwelling house and the barn, and by the decree of the circuit court the height of this bridge was fixed at 19½ feet, involving an approach 13 feet high on either side,

and sloping clear across and beyond the right of way, the estimated cost of which will be about one thousand dollars.

By this decree the appellee is allowed to erect this structure, charging the company twice the value thereof with interest, and the cost of maintaining it must, in the same way, be borne by the company. This seems to be a very heavy burden, and, unless clearly within the purview of the statute, must be regarded as unreasonably oppressive and not in keeping with the equitable character of relief administered by a court of chancery. As the statute has furnished no measure or standard by which it can be ascertained when the crossings contemplated are necessary, courts must regard every case upon its own facts, having due care to protect the rights of both parties; and in the first place, as the inconvenience of operating a farm thus divided is proper to be considered in fixing the damage to the land not taken (C. & I. R. R. Co. v. Hopkins, 90 Ill. 316), and presumably has been allowed and paid for, it is not enough to show that the crossing contended for would add somewhat to the convenience of the land owner.

Perhaps this might be true yet no necessity exist. Again the safety of the traveling public and the safety and convenience of the corporation in the operation of its trains and in the care and use of its right of way should be regarded. And finally the relative rights of both parties should be kept in view so as to furnish reasonable safety and security to each without the imposition of an unreasonable burden or duty upon either, considering all the special circumstances of the case. The proposed bridge will not materially shorten the distance between the dwelling and the barn. From the diagram contained in the record it is apparent that so far as the mere distance between these two points is concerned crossing No. 4 answers the purpose well enough.

It is objected that this is unsafe because on the north side the cut is six feet deep at the track and that there is great danger in crossing from the north to the south. It appears from the evidence, however, that approaching this crossing from the north a train can be seen east 1,500 feet, more than

a quarter of a mile, and west two miles; approaching from the south one can see west two miles and east three miles. If this be so, and the evidence is not contradicted, then in the exercise of ordinary care the crossing can be passed with safety.

The law does not intend, for it would be unreasonable, that the crossing should be so arranged as to preclude all possible danger and relieve persons about to pass over from the exercise of any additional care by reason of the presence of a railway track over which it is the right and duty of the company to move its trains for the accommodation of the public as well as for its own profit. Every one must take heed, observe the situation and use due care for his own safety, the degree of care to be dependent upon the necessity and to be measured by the peculiar conditions of things.

It is not to be expected that one, when about to cross a railroad, should be absolved from this duty of caring for his own welfare, and the law never intended this when it provided that the corporation should make these crossings, when and where necessary. Suppose the proposed bridge were built, with the extensive approach that would be necessary to reach it, it can hardly be supposed that a prudent person would undertake to cross it with a spirited or even a gentle team when a train was passing below, and therefore the practical use of the bridge would be limited to such times as trains were not passing, this to be ascertained by an observation for the purpose. And it is not necessary to remark that with such a degree of caution, the use of crossing No. 4 might be considered perfectly safe. On the other hand should be considered the effect of the bridge and its approaches in shutting off the view, and thereby increasing the hazard of operating this part of the road, thus involving extra danger to the property of the corporation as well as to the lives of the employes and those who ride upon its trains. We do not care to pursue the matter further, as we think it must be apparent that when the merits of the whole case, and the relative rights of both parties and the public are duly considered, the demand for this elevated crossing is unwarranted and unreasonable.

It is hardly necessary to say, that for all other purposes of communication, from one part of the farm to the other, the other crossings referred to are ample and sufficient. It is possible that subsequent experience may show it would be rather more convenient to have some of them located a little differently, but this is not a substantial matter of complaint. The land owner having received a fair and just compensation for the damages sustained by reason of the location of the road, must make some effort to accommodate himself to the present situation and he will doubtless find that the peril' and inconvenience are less than he had expected. The law must be practical in its operation, and can not undertake to do more than provide substantial amends for every loss or injury sustained, leaving the party affected to use his good judgment and common sense in obviating such annoyance as may result from these insignificant or exceptional circumstances which can not be foreseen or provided against by any system of jurisprudence that has ever been devised.

It follows that we are unable to approve the decree of the circuit court, and we therefore reverse the same with directions to make the injunction perpetual as prayed in the bill.

Reversed and remanded.