EDWIN BEARDSLEY and Another, Respondents, v. THE LEHIGH VALLEY RAILWAY COMPANY, Appellant.

*Railroads — when compelled to construct a farm crossing below grade — an award based upon a grade crossing — improper evidence — when not prejudicial.*

A railroad corporation, by condemnation proceedings, acquired title for railroad purposes to a strip of land running in an easterly and westerly direction through a farm belonging to Edwin Beardsley and another. The strip divided the farm into nearly equal parts, the barn, farm buildings and a spring being upon the north part and the south half being used for the pasture of cattle, which, by reason of there being no water there in the fall of the year, were obliged to go to the spring on the north side for it. Proceeding from the east the railroad, as proposed, ran for 1,800 feet in a cut; at a point a few hundred feet from the west line of the farm there was a natural depression which had been used by Beardsley as a convenient means of access between the north and south parts of the farm, and which the railroad contemplated closing and crossing by a solid embankment twelve feet high.

The railroad proposed to furnish farm crossings at grade, but either of those offered by the company would involve the ascent of a considerable grade, and there was doubt whether they could be used without great inconvenience to Beardsley, who requested an under-grade crossing through the depression, which was refused.

The company having commenced to fill the depression, Beardsley brought this action to restrain the continuance of the work, upon the trial of which an engineer testified for the defense that an under-grade crossing would involve an additional expense of $2,600.

*Held*, that, although it is the right of a railroad corporation in the first instance to locate farm crossings, the present was a case where the under-grade crossing should be built.

That Beardsley should not be compelled to use a grade crossing involving a steep ascent, especially as the under-grade crossing would benefit the railroad company by obviating possible collisions with cattle and teams.

That the evidence not showing it conclusively, the court would not assume that the award made in the condemnation proceedings was intended to cover the subsequent inconvenience likely to result from the closing of the natural depression.

Certain witnesses for the plaintiff were improperly allowed to give testimony as to value, in regard to which the court made no finding, and was not requested to find.

*Held*, that the defendant was not prejudiced by the allowance of such testimony.

Appeal by the defendant, the Lehigh Valley Railroad Company, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Ontario on the 2d day of July, 1891, in favor

of the plaintiffs for equitable relief and costs, and from the whole of said judgment, except so much as directed the construction of a grade crossing near the east line of the plaintiff's farm.

The action was tried by the court at the Ontario Special Term, at which the following opinion was delivered by Mr. Justice ADAMS, before whom the case was tried:

ADAMS, J. The evidence in this case establishes, with reasonable certainty, that the plaintiffs are the owners of a farm in the town of Phelps, Ontario county, containing about one hundred acres of land; that the defendant is a railroad corporation organized under chapter 140 of the Laws of 1850, and that, by condemnation proceedings, it has acquired title for the use of the railroad to a strip of land about two thousand three hundred feet in length, running through the plaintiffs' farm in an easterly and westerly direction, dividing the farm into two nearly equal parts; that such strip is about ninety-nine feet in width at the east end, and continues through the greater portion of the farm at that width; but as it approaches the west line the width increases to nearly one hundred and fifty feet; that the entire strip contains about six acres of land; and the compensation awarded the plaintiffs therefor, and for the damage to the remaining premises, in such condemnation proceedings was the sum of $3,590; that the plaintiffs' barns and other farm buildings are on the north side of the line of the railroad, and there is also on the same side an inexhaustible spring of water; that the lands upon the south side are in a state of cultivation, and are often used for pasturing large numbers of sheep and cattle after the crops are removed; but in the latter part of the season there is no supply of water upon these lands, and the sheep and cattle there pastured are watered at the spring upon the north side; that for a distance of about one thousand eight hundred feet the defendant's railroad, when completed, will be in a cut or excavation of from two to thirteen feet below the surface, which for most of the way will be impassable for teams and cattle by reason of the depth; that at a point a few hundred feet east of the west line of the farm there is a natural depression or hollow that is crossed by the railroad; and the plaintiffs have been accustomed to use this depression as an easy and direct passage-way for teams in going to and from the north and south parts of the farm in their farming operations, and also for the use of their cattle

pastured upon the south side in going to and from the spring upon the north side; that the defendant's road is being constructed across this depression at a grade of about twelve feet above the surface of the ground, and the defendant intends to fill in such depression to that depth in order to carry its tracks over the same, and that when this is accomplished there will be an impassable barrier to the passage of teams or cattle through this depression.

In the construction of its road over the plaintiffs' farm upon the proposed route the defendant has offered to provide two crossings at grade for the use of the plaintiffs, one of them being about three hundred feet west of the depression, and the other about two hundred feet east; or, in lieu of either one of these, one at the extreme eastern end of the farm; but either of the proposed crossings in the vicinity of the depression will involve the necessity of overcoming a considerable grade in the use of the same; and there is some doubt whether they could be used, when constructed, without great inconvenience to the plaintiffs.

Before this action was commenced the plaintiffs requested of the defendant that they be allowed an under-grade crossing through the depression, which request was refused; the principal reason assigned for such refusal being that there was not sufficient room therefor; and thereupon the defendant proceeded to fill in such depression, but had not finished the same when this action was brought restraining it from so doing.

Upon these facts it must be assumed, I think, that the depression referred to has afforded to the plaintiffs the natural and most convenient means of passing to and from the north and south portions of their farm; and that it has been generally, though not always, used for that purpose. It may likewise be assumed that, when the defendant's road is constructed across such depression, there will be ample room for an under-grade crossing which can be easily provided, although, as is testified to by the defendant's engineer, this will involve an additional cost of about twenty-six hundred dollars. The question, therefore, which fairly presents itself to the court is, shall the defendant be required to incur this expense in order to provide the plaintiffs with a convenient means of crossing its tracks? That this court has the power to compel a railroad corporation to construct such farm crossings as it deems proper and necessary in a

given case has been frequently held, and I do not understand that the proposition is now questioned by the defendant. (*Jones v. Seligman*, 16 Hun, 230; affirmed, 81 N. Y., 190; *Wademan v. A. and S. R. R. Co.*, 51 id., 568; *Post v. W. S. R. R. Co.*, 123 id., 580, 591.)

On the other hand, it is equally well settled that, under the provisions of the act of 1850, requiring corporations organized under that act to erect and maintain suitable farm crossings for the use of the proprietors of lands adjoining the railroads, it is the right of the corporation in the first instance to locate the crossings. (*Wademan v. A. and S. R. R. Co., supra.*) But, in the exercise of this right, it is, nevertheless, the duty of the corporation to consult the convenience of both parties; and it will not be permitted to locate such a crossing as will subject the proprietor to needless and unreasonable injury or inconvenience.

In reaching a conclusion upon the question which presents itself for consideration, it will be necessary, therefore, to determine whether or not the defendant has made right use of its discretionary powers, and this, of course, depends entirely upon the circumstances peculiar to the case in hand. Ordinarily, grade-crossings are all that can be reasonably required of a railroad corporation for farm purposes, and, unless there is something to take this case out of the ordinary rule, they are all that ought to be required of the defendant.

What, then, are the extraordinary features of the case under consideration? Not the fact that the defendant's railroad cuts the plaintiffs' farm in twain, for it is the doing of this very thing which the statute contemplates in requiring that suitable crossings shall be constructed, which requirement is, as has been said, ordinarily fulfilled by providing crossings at grade.

Nor do I think that the fact that an under-grade crossing would prove more convenient to the plaintiffs in their farming operations or in watering their stock would, of itself, furnish a sufficient reason for departing from the rule generally adopted in these cases; but such a reason is furnished, if at all, by the combination of these facts with the further fact that a grade-crossing at either of the two places, near the depression selected and proposed by the defendant, cannot be used without compelling plaintiffs to overcome a steep grade, which would necessarily be attended not only with great

inconvenience, but likewise with greatly increased labor to themselves and their teams, and that it would also involve the necessity of either drawing small loads or incurring the risk of tipping over, to say nothing of the danger to be apprehended from passing trains.

None of these objections operates against the under-grade crossing. As has already been shown, this is the natural and customary route taken by the plaintiffs; its use is attended by none of the dangers or disadvantages above mentioned, and it is likewise much more convenient and accessible; but, over and above all these considerations, it would seem as though it were the one means of communication between the two portions of the plaintiffs' farm, which would suggest itself to any person or tribunal which was endeavoring to consult the convenience and interest of both these parties, for here is a depression to be crossed by a track twelve feet above the surface of the ground, and this elevation the defendant designs filling in so as to make a solid embankment. Now, if instead of doing this an aperture should be left, sufficient in size to permit teams and wagons to pass through, which could easily be accomplished without very great additional expense, how incomparably better it would be for all concerned. To the plaintiffs it would prove convenient and easy as a drive-way and it is equally clear that to the defendant it would, in the end, be much less expensive than a crossing at grade where the danger to be apprehended from collisions with cattle and teams is certainly much greater than that which counsel imagines would attend the passage of cars over a bridge fourteen feet in length.

It is a fact which I believe appears in this case, but, if it does not, the court will take judicial notice of it that the defendant in constructing its lines of road through this State has adopted an overhead or underground grade crossing as the best means of getting across every public highway where such means was found practicable.

In adopting this course, which was purely voluntary, it is to be commended; and all that the plaintiffs seek by this action is to require that the same policy be pursued towards them as individuals which the defendant by its own acts concedes is proper towards the public at large; and while it is not designed by this decision to establish a precedent for under-grade farm crossings as a rule, it does seem as though, for the reasons here given, it would be the only suitable crossing in this particular case.

In reaching this conclusion the court has not been unmindful of the contention made by the defendant's counsel, that the inconveniences and disadvantages of a grade crossing were considered in the condemnation proceedings, and that they constituted an important element of the damages awarded the plaintiffs in that proceeding.

This contention would, at first glance, seem to possess some weight, for it certainly does appear that several of the witnesses sworn for the land owners did, to some extent, at least, base their estimate of damage upon the fact that the south part of the farm was to be cut off from the spring upon the north part; but a careful analysis of the whole testimony will show that the witnesses who appeared to take this fact into consideration placed the damages at a sum lower than did others who did not mention this as an element of damages, while the average estimate made by all the witnesses on both sides was nearly a thousand dollars in excess of the award.

It cannot be assumed that the award was made in contemplation of the inconvenience or damage to be apprehended from one or more crossings (*Smith* v. *N. Y. and O. M. R. R. Co.*, 63 N. Y., 58); and in the case of *Jones* v. *Seligman*, heretofore cited, it was said by MILLER, J. : " We think that such an item is not a proper subject of consideration in estimating damages for land taken for railroad purposes, and that they (crossings) have once been made cannot affect the right of the owner to additional ones where these are insufficient." It follows, therefore, that this contention of defendant's counsel is not sustained by either the facts or the law of the case.

I am, consequently, of the opinion that the plaintiffs are entitled to the relief sought in this action, with costs.

*A. P. Rose*, for the appellant.

*J. C. Smith*, for the respondent.

PER CURIAM:

The judge who tried this case had, by consent of the parties, the advantage of a personal view and inspection of the premises; it is impossible, therefore, to characterize any of his findings of fact as unwarranted by the evidence. His opinion, given above, seems to us to justify the conclusions of law drawn from those findings.

The only exception taken on the trial, which is argued here, relates to the admission in evidence of the opinions of witnesses in regard

to the damage to the farm which would result from the want of an underground crossing proposed. The evidence was, no doubt, offered for the purpose of a comparison between the loss to be sustained, on the one hand, if the crossing were not constructed, and the expense to be incurred, on the other hand, in its construction, as bearing upon the question of the form of the relief to be granted. But there was no finding or request to find on that subject; so that the evidence, if not strictly admissible, was not to the prejudice of the defendant.

The judgment appealed from should be affirmed, with costs.

Present — DWIGHT, P. J., MACOMBER and LEWIS, JJ.

Judgment appealed from affirmed, with costs.