THE STATE EX REL. JACQUITH, Respondent, vs. WISCONSIN CENTRAL RAILWAY COMPANY, Appellant.

*December 13, 1904—January 10, 1905.*

*Railroads: Underground farm crossings: Statutes:* Mandamus.

1. Under sec. 1810, Stats. 1898, requiring railroads to "erect and maintain . . . suitable and convenient farm crossings of the road for the use of the occupants of the lands adjoining," the suitability and convenience is to be considered with due reference to the inconvenience and expense to the railroad company, including the possible interruption of trains, the weakening of its tracks, and the increase of the hazard of accidents.
2. Under said section, under-crossings may, in some cases, be required of a railroad as essential to the convenience of the occupants of the land.
3. Under *mandamus* to compel a railroad company to maintain and keep open an already existing farm crossing for cattle

State ex rel. Jacquith v. Wisconsin Central R. Co. 123 Wis. 551.

under its tracks, the evidence, stated in the opinion, is *held* to sustain findings that the maintenance of such under-crossing, adequate for relator's cattle, was essential to his occupancy and operation of his farm; that the existing under-crossing was suitable and convenient in the sense of the statute, giving all due regard to the inconvenience and expense thereby imposed on the railroad company, and that it was located in the proper place, whether the owner's interest or the company's be considered.

4. The duty of a railroad company to construct and maintain such crossings as the court shall determine to be suitable and convenient is a clear legal duty, imposed by express statute, and may be enforced by *mandamus.*

Appeal from a judgment of the circuit court for Portage county: Chas. M. Webb, Circuit Judge. *Affirmed.*

*Mandamus* to compel defendant to maintain and keep open an already existing farm crossing for cattle, under its tracks. It appeared without dispute: That the Wisconsin Central Railroad Company, the predecessor of the defendant, constructed its road in the locality in question about 1871. That at that time one Brimhall was the owner of the farm now owned by relator, across which the railroad passed generally in an easterly and westerly direction. That the residence and buildings were upon the southerly part of that farm on highway, while the pasture part of the farm lay to the northward. That representatives of the railroad company applied to Brimhall for a right of way, and he consented to give it upon condition that they would always maintain a subway crossing for his passage at a place to be agreed upon. To this they assented verbally, and the road was built, and the present crossing, consisting of piling surmounted by horizontal timbers carrying the rails, was put at the place indicated by him. That after the road was built representatives of the company applied to him for conveyance, and at the same time, and as part of the same transaction, a deed of the right of way was executed, and also an agreement back for the maintenance of this subway crossing, about 1872. That when originally con-

structed it was about twelve to sixteen feet wide and eight
feet high. That it had always been maintained according to
its original construction, except that four or five years ago
the company lowered the grade of its tracks so that the sub-
way was only about five feet high and eight feet wide.    In
1892 Brimhall sold by warranty deed to the relator the entire
farm, and the latter had resided upon and operated same
since; the facts in regard to the location of this subway hav-
ing been fully explained to him at the time of the purchase.
The principal use of the farm at all times had been for dairy
purposes, the relator keeping twenty-five or thirty cows; and
the arrangements were such that the barn and farmyard, with
water for cattle, were on the south side of the track, while the
pasturage was all to the northward. That frequent and easy
access of the cattle from their pasturage to water was of great
importance to their welfare and productiveness; also their
freedom to pass to and from the pasture both day and night.
About forty rods westward of this under-crossing the railroad
company had put in and maintained for nearly thirty years a
grade crossing used by the owner of the farm for passage of
his wagons and men in the course of cultivation. That to use
this overway crossing for his cattle would involve building a
lane through his cultivated land, the employment of a man
to drive the cattle each way, which would involve a crossing
of the railroad at least six times a day, besides making it in-
convenient for cattle to pass from pasture to water during the
night. That this would involve relator in expense of approxi-
mately $100 a year, besides impairing productiveness of his
dairy cows.    Shortly before the commencement of this suit
the railway company, in the process of improving its road
and changing temporary to permanent construction, under-
took to fill up entirely this under-crossing with a bank of
earth, intending to leave no underground passageway; there
being no other place on relator's farm so suitable therefor, by
reason of the topography. Whereupon this action was com-

menced. It appeared that the maintenance of the wooden bridge sixteen feet wide in the track would involve an expense to the company of about $65 every four years, and that a steel structure would cost $1,100, besides which it was claimed there was some enhanced risk in operating the railroad, a bridge being less safe than a solid grade. It also appeared that, in case this space was filled up, the grade would need to be perforated somewhere else with a culvert to make way for the surface waters which tend toward the northward. It also appeared that about 1899 the present defendant purchased the railroad from its original constructor. At the close of the trial, upon substantially the foregoing facts, the court held that the undisputed evidence established that the duty of the railway company to maintain suitable and convenient road farm crossings required an under-crossing at the place in question, and therefore directed a verdict for the relator, upon which judgment commanding the maintenance of this crossing was rendered, from which the defendant appeals.

For the appellant there was a brief by *Howard Morris* and *Thos. H. Gill,* and oral argument by *Mr. Gill.*

For the respondent there was a brief by *Cate, Dahl & Nelson,* and oral argument by *G. M. Dahl.*

DODGE, J. Sec. 1810, Stats. 1898, requires a railroad company to "erect and maintain on both sides of any portion of its road good and sufficient fences . . . and suitable and convenient farm crossings of the road for the use of the occupants of the lands adjoining." A very large part of appellant's brief is devoted to the question who has the right to select place of a farm crossing, conceding that one be proper. But this question is not involved. The writ before us seeks to command, not the construction of a new crossing, but the maintenance of one, the place for which was selected by both parties thirty years ago, and as to which it is apparent the relator's farm has, in the course of many years, become ad-

justed, and is now occupied. We can discover in this situa-
tion no reason to consider whether the owner has any voice in
the original selection of a place for his farm crossing, or, if
the railroad company has the right of selection, how far it
must defer to the reasonable need and convenience of the
owner. Where the place has already been selected, and the
railroad built with reference thereto (especially when an
under-crossing), there remains only the question whether some
such crossing is suitable and convenient for the use of the oc-
cupant, as those words are used in the statute. The discus-
sion as to the right of selection is still further rendered acad-
emic by the fact that the railroad company's contention is,
not that it should be at some other place, but that it should be
discontinued entirely.

Although the statute requires suitable and convenient cross-
ings for the use of occupants, we have no doubt that such suit-
ability and convenience is to be considered with due reference
to the inconvenience and expense to the railroad company, in-
cluding, of course, the possible interruption of trains, the
weakening of its tracks, and the increase of the hazard of ac-
cidents; in other words, that a crossing, especially an addi-
tional one, which would only slightly enhance the convenience
of the owner, but would seriously obstruct the operation of
the railroad, or impose upon it very great expense, should
perhaps be denied altogether under certain circumstances.
There is, however, nothing to indicate that those considera-
tions have been ignored by the trial court in the present case,
nor have we any disposition to ignore them in the considera-
tion of the evidence. That under-crossings may, in some
cases, be required of a railroad as essential to the convenience
of the occupant of the land, is fully established by all author-
ities. *Jones v. Seligman,* 81 N. Y. 190; *Beardsley v. L. V.
R. Co.* 65 Hun, 502, 20 N. Y. Supp. 458; 8 Am. & Eng.
Ency. of Law (2d ed.) 432; *Port v. H. & B. T. R. Co.* 168
Pa. St. 19, 31 Atl. 950; 3 Elliott, Railroads, § 1147; *Buffalo*

*S. & C. Co. v. D., L. & W. R. Co.* 130 N. Y. 152, 29 N. E. 121; *Beardsley v. L. V. R. Co.* 142 N. Y. 173, 36 N. E. 877. We have no hesitation in affirming this view, for they may be vastly more promotive of the owner's convenience and, while they may involve more of expense to the railroad company, it may well be doubted whether they are not always a real economy over the grade crossing with its continual peril of collision of trains with passing teams or cattle.

Turning to the evidence in this case, we find it wholly without dispute as to specific facts. Its substance is sufficiently set forth in the statement of facts. We are satisfied, after careful consideration, that the trial court was correct in the view that no inference could reasonably be drawn from such facts other than that the maintenance of an under-crossing adequate for relator's cattle is so essential to his occupancy and operation of his farm that it is suitable and convenient in the sense of the statute, giving all due regard to the inconvenience and expense thereby imposed on the railway company. As to location, there is no possible doubt that, if such crossing is to be maintained at all, this is the proper and best place for it, whether the owner's interests or the company's be considered. Hence the instruction of verdict for relator was proper. The duty of the defendant to construct and maintain such crossings as the court shall determine to be suitable and convenient is a clear legal duty, imposed by express statute, and therefore enforcible by *mandamus,* notwithstanding it might, perhaps, be enforced also by proceedings in equity. *State ex rel. Grady v. C., M. & N. R. Co.* 79 Wis. 259, 48 N. W. 243.

*By the Court.*—Judgment affirmed.