# JOSEE T. POWELL v. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Appellant.

## Division One, December 23, 1908.

1. **RAILROAD CROSSING: Undergrade: Change: Convenience.** The statutes do not require a railroad company to put in an undergrade railroad crossing merely because it will be more convenient to the proprietor of a farm through which the railroad runs. The statutes contemplate grade crossings, and the measure of a company's duty in regard to constructing a crossing is prescribed by them, and no other duty can be exacted of it in regard to the kind of crossing it must put in than they prescribe, unless there are exceptional circumstances. But where the railroad company in constructing its road built a trestle, and thereby made for such proprietor an undergrade crossing, and thereafter filled it up and in lieu thereof made another crossing at grade, with gates, a court of equity has the power to say whether the company shall restore the undergrade crossing; and in doing so will consider the safety of the traveling public, the loss and damage to the farm's proprietor, and may consider the proprietor's prescriptive right to an easement in the undergrade crossing.

2. **————: Manner of Construction.** The statute has given neither to the railroad company nor to the owner of the adjoining land the right to dictate the location or manner of construction of a railroad crossing. The public use is to be considered above private convenience. The statute which gives to a farmer the right to compel a railroad company to establish a crossing, where the railroad divides his land, is to a considerable extent general in its terms, leaving many details to be adjusted according to the peculiar situation and circumstances of each particular case, and this adjustment must be made by the courts according to the dictates of an enlightened sense of justice, regard being given to the rights and duties both of the railroad company and of the landowner.

3. **————: Undergrade: Mandatory Injunction: Compelling Restoration: In Equity and at Law.** Under proper circumstances and when there can be no adequate compensation in damages, equity will order the construction of a private undergrade crossing. And where the landowner will be subjected, if forced to use a grade for crossing, to inconvenience and loss of an indefinite duration for which damages cannot be easily estimated, he has no remedy at law, and the court will compel the construction of the undergrade crossing.

4. ———: **Title to Right of Way.** A railway right of way is public property, and no person can acquire title thereto by adverse possession.

5. ———: **Easement: By Prescription: Limitations.** The period of adverse use necessary to give the owner of a farm an easement right by prescription to use an undergrade crossing, is ten years.

6. ———: ———: **Subservient to Railroad Use.** But an easement right to use a grade or undergrade crossing, even if adverse for ten years, is to be enjoyed in subordination to the railway company's right to maintain a safe roadbed and track and to change the crossing whenever necessary in the interest of safety.

7. ———: ———: **Change Not for Safety: No Easement Necessary.** But where the railroad company had constructed an undergrade crossing by laying its track on a trestle, and afterwards filled up the trestle with earth, and established near by a grade crossing, it is not necessary, in order to compel the restoration of the undergrade crossing, to determine whether the owner of the farm had prior thereto acquired an easement right to the undergrade crossing by adverse use, if the company by its own uncontradicted evidence shows that a solid embankment is not essential to a safe roadbed where the trestle stood, and that it may be just as safe with an arched undergrade crossing, and the evidence further shows that an indeterminable loss will result to the farm-owner if the undergrade crossing is not restored.

8. ———: **Undergrade: Restoration Compelled: Mandatory Injunction.** Where the railway company, at the time it built the road, provided for the proprietor of a farm through which the road runs an undergrade crossing by the erection of a trestle, and the laying of its tracks thereon, and left the subway for his use, and it appears that on one side of the railroad was a perennial spring, and on the other his barns and pasture; that he constructed his barns and fences in reference to that subway and to the use of the spring, and had enjoyed its use for ten or twelve years; that thereafter the company filled up the trestle, and constructed for him a grade crossing near by with gates; that to use the grade crossing he would be compelled to reconstruct his fences and barns or employ a servant to watch his stock as they go through the gates and over the crossing to get water; that an archway may be constructed where the trestle was, without imperiling the safety of the roadbed and tracks; that there is no evidence of what it would cost the company to construct the archway, though it was a matter easy of proof and therefore the court is left to its own judgment about the matter, which is that the expense of constructing the arch

would be much less in the long run than the expense to the proprietor in using the grade crossing, to say nothing of the inconvenience—a court of equity will compel the company to restore the undergrade crossing.

9. ———: ———: ———: **When Title of Right of Way is in Railroad.** The execution of an unconditional deed conveying land to be used for a right of way to the railroad company, does not waive the grantor's right to a private crossing to and from his lands adjoining on either side. He may claim and enforce the crossing, notwithstanding his deed, nor does he waive his right to a suitable crossing, particularly the kind originally made and long used by him.

Transferred from St. Louis Court of Appeals.

AFFIRMED.

*Thomas R. Morrow, Samuel W. Moore, N. M. Pettingill* and *Samuel W. Sawyer* for appellant.

(1) An easement upon a railroad right of way cannot be obtained by prescription. Railroad v. Totman, 149 Mo. 657; Railroad v. Smith, 170 Mo. 327; Costello v. Railroad, 70 N. H. 403. (2) The user in the case at bar was not under a claim of right, nor adverse to the railway company, but was permissive and therefore could not ripen into an easement by prescription. Pitzman v. Boyce, 111 Mo. 387; Railroad v. Stock Yards Co., 120 Mo. 541; Smith v. Sedalia, 152 Mo. 283; Hunnewell v. Burchett, 152 Mo. 611; Anthony v. Building Co., 188 Mo. 704; Missouri Lumber Co. v. Jewell, 200 Mo. 707; Railroad v. Munsell, 192 Ill. 430; Railroad v. Ives, 202 Ill. 69; Railroad v. Johnson, 205 Ill. 698; Railroad v. Hammond, 210 Ill. 187; Schrimper v. Railroad, 115 Ia. 35; Davis v. Railroad, 140 Ind. 468. (3) The doctrine of equitable estoppel is not applicable. 11 Am. and Eng. Ency. Law (2 Ed.), 434; Bigelow, Estoppel (2 Ed.), secs. 437, 438, 441; Bales v. Perry, 51 Mo. 449; Spurlock v. Sproule, 72 Mo. 503; Acton v. Dooley, 74 Mo. 63; Burke v. Adams, 80 Mo. 504; Blodgett v. Perry, 97 Mo. 263; Hequemberg v. Edwards, 155 Mo. 514; Matlock v. Railroad,

Powell v. Railroad.

198 Mo. 500; Grabill v. Bearden, 62 Mo. App. 459; Brinckerhoff, etc., Co. v. Horn, 83 Mo. App. 114; Estis v. Jackson, 111 N. C. 145; Holcomb v. Boynton, 151 Ill. 294; McKeen v. Naughton, 88 Cal. 462; Hoosier Stone Co. v. Malott, 130 Ind. 21; Burdick v. Michael, 32 Mich. 246; East v. Doolittle, 72 N. C. 562. (4) There is no other theory upon which a mandatory injunction can be issued. 16 Am. and Eng. Ency. Law (2 Ed.), 344; 1 Pom. Eq. Jur. (3 Ed.), secs. 46, 47; 2 Spelling, Injunctions, sec. 20; Moss v. Railroad, 85 Mo. 86; Sell v. West, 125 Mo. 621; Harrelson v. Railroad, 151 Mo. 482; State v. Railroad, 99 Ia. 565; Chalcraft v. Railroad, 113 Ill. 86; Railroad v. Clouse, 13 Can. Sup. Ct. Rep. 139, 35 Am. and Eng. R. R. Cases, 296; Railroad v. Erwin, 13 Can. Sup. Ct. Rep. 261, 35 Am. and Eng. R. R. Cases, 311.

*C. H. Hilbert* and *Smoot, Boyd & Smoot* for respondent.

(1) The finding of the court is in effect that defendant has not furnished the necessary farm crossing as required by statute. (2) (a) Defendant permitted plaintiff to accustom himself, adjust his property, and accommodate his farm to the underground crossing in such a way that he cannot be deprived of it without great detriment and a permanent wrong, and defendant is estopped to deny plaintiff the right to the underway. Elliott on Roads and Streets, secs. 127, 132, 134, 135, and 176; Gamble v. St. Louis, 12 Mo. 617; Jones v. Seligman, 81 N. Y. App. 190. (b) Where the statute requires the defendant to construct necessary farm crossings and it has acquiesced in the use of the under passage and repaired the under passage as and for a farm crossing and the plaintiff has erected his farm buildings with this in view, the crossing is established by long usage. Easley v. Railroad,

113 Mo. 243; R. S. 1899, sec. 1105; State v. Walters, 69 Mo. 463; State v. Wells, 70 Mo. 635; State v. Bradley, 21 Mo. App. 318; Jones v. Seligman, 81 N. Y. App. 190. (3) Injunction is the proper remedy to enforce a legal right, or a positive duty, or where a legal remedy is inadequate, or is not convenient, or effective, or beneficial, or complete. Jones v. Seligman, 81 N. Y. App. 190; Gordon v. Mansfield, 84 Mo. App. 367; Shepard v. May, 83 Mo. App. 272; Peterson v. Beha, 161 Mo. 513. The court did not err in refusing instructions.

VALLIANT, P. J.—This cause comes to this court from the St. Louis Court of Appeals, on the certificate of one of the judges of that court that the opinion of the majority is in conflict with the decisions of this court in certain cases mentioned.

The following is the majority opinion of that court written by GOODE, J.:

"Plaintiff owns a farm of about five hundred acres in Scotland county, through which the defendant's railroad runs diagonally from the northeast to the southwest. The road was constructed through the farm in 1887 by the Chicago, Santa Fe & California Railroad Company, of which the defendant is successor. Plaintiff conveyed land for the right of way through his farm to the original company April 13, 1887, for a consideration stated to be $806.80. Plaintiff has been the owner of the farm for upwards of twenty-five years. Some of his land lies on the southeast side of the railroad and the remainder on the northwest side. One eighty-acre tract is in pasture. Fifty acres of it lies southeast of the railroad and thirty acres northwest. On the fifty acres on the south side there is a perennial spring which plaintiff used until 1899 for watering his stock. His barn and cattle lot are on the thirty acres north of the railroad. When the road was built in 1887 an open trestle was left between the

thirty-acre tract on the north and the fifty-acre tract on the south, so that the plaintiff's stock would have easy access to the water supplied by the spring on the south side, according to their habit. This trestle was about ten feet high and under it a road was left for plaintiff's use in watering his stock and passing from the north to the south side of his farm. In 1899 the railroad company filled the passage under the trestle with earth, making a solid embankment; thus cutting off the undergrade connection between plaintiff's pasture, stock lots and barn and the land and spring on the south side. In lieu of the undergrade way the company constructed, or intends to construct, a grade crossing at the west end of the trestle and where the track emerges from a cut. This grade crossing will require gates on either side to enclose the right of way. The second count of the petition, on which relief was granted, after averring the facts somewhat as we have stated them, avers that after the construction of the railroad plaintiff's stock continued to pass through the undergrade way until it was filled in 1899; that plaintiff had arranged his feed-lots, barns, pasture and fences with reference to the undergrade way left by the railroad company and said way was the only proper and convenient place for a farm-crossing and the most convenient and best suited to plaintiff's use; that where the defendant intends to construct an overgrade way it will not be so commodious and convenient for plaintiff; that since filling up the trestle the defendant has failed to furnish plaintiff a crossing; that the grade crossing will require a readjustment of the plaintiff's feed-lots, pasture, barn and fences and be dangerous for the passage of his stock. Judgment was prayed for $500 damages for failure to furnish a proper crossing, with a prayer that the defendant be compelled to reopen and construct the undergrade way as used by plaintiff until filled by the defendant. The answer was a general denial.

"The court submitted eight issues to the jury as follows:

" '1.   Is the underground crossing asked for by the. plaintiff a practical and beneficial crossing, taking into consideration the use to. which plaintiff's land is to be put and all other facts and circumstances in the case?

" '2.   Can a safe and secure underground crossing be made at or near the point where plaintiff had been using the same before said embankment was put in?

" '3.   Has the defendant furnished plaintiff on his. farm sufficient farm crossings for the accommodation and use of the farm?

" '4.   Does plaintiff have the adverse, unobstructed and continuous use of the underway as a crossing for more than ten years after the construction of its roadbed?   If so, was such use and enjoyment with the acquiescence of defendant?

" '5.   Would the grade crossing be more advantageous and convenient for defendant than the underground crossing?

" '6.   Did plaintiff build his fences, barns and other improvements with reference to and so as to accommodate himself to said underground crossing?

" '7.   Outside of the arrangement of plaintiff's gates and fences and the trouble of opening and shutting gates and danger to stock,. would the underground crossing be more convenient to plaintiff than the grade crossing?

" '8.   The jury will say what plaintiff's damages are, if any, by reason of a want of crossing from October, 1899, to June 2, 1900, if you find proper and sufficient crossing has not been furnished and that plaintiff is damaged thereby.'

"To all those issues except numbers three and eight the jury answered 'yes,' but to the third and eighth no answer was given.

"After findings on the issues submitted to the jury had been reported, the court entered the following finding and judgment:

"'Now the court adopted the foregoing findings of said jury, and further finds that at the time defendant constructed its roadbed through plaintiff's land it ran through the following: north half of the northeast fourth of section 25, township 64, range 11, in Scotland county, Missouri; that at the time they so built and purchased the roadway, the plaintiff had on the east side of said roadbed a spring of water and that he owned in connection with said lands on the east side a farm of something more than five hundred acres; that said spring was valuable in connection with said farm for the water privileges to be derived therefrom; that at the time of building said road defendant left under said roadway where the same crossed the aforesaid lands a passageway under the road, which served as a farm crossing to and from the balance of said farm to said spring; there was a trestleway over the same and the plaintiff used same by the consent of defendant, and by its acquiescence for over ten years before the institution of this suit, and that defendant kept the same in repair for him and treated the same as a farm crossing.

"'And the court further finds that the plaintiff built his improvements on his farm, consisting of the barns and fences, with a view to using such underground crossings to and from said spring to the balance of his farm, and he expended his money with a view to using the same.

"'The court further finds that afterwards defendant made a solid embankment across said underground crossing so obstructing same, and cutting off plaintiff's communication with his spring situated on the east side of said roadway.

"'And the court further finds that it would be more advantageous to plaintiff and after its construc-

tion equally commodious for defendant, to have a way where claimed by plaintiff, which is near his barn on such aforesaid tract, and that the same would be more convenient to plaintiff on account of his said improvements.

" 'And the court further finds that plaintiff ought to have an underground crossing immediately east of said barn, where said improvements have been so placed by plaintiff and where he had said crossing before said embankment was built over it.

" 'It is therefore ordered and adjudged by the court that the plaintiff have judgment herein in the sum of one cent and that defendant be required to build under said roadbed an underground crossing at the point where plaintiff had used same for ten years, and that the same is equally convenient for defendant and more convenient for plaintiff, and it is ordered and adjudged that said defendant be required to construct for plaintiff a convenient farm crossing at said point, and it is further ordered that plaintiff recover of defendant damages in the sum of one cent and the costs of this suit.'

"For the plaintiff Edward Tull testified that he knew the eighty-acre tract in question, having been raised on an adjoining farm; that there was a spring on the south side of the railroad which furnished water the year around; plaintiff had owned the farm since witness's youth and there had always been a passageway from the barn to the spring; this passageway was left open for more than ten years after the railroad was built; there was an underground crossing; the spring was used in connection with the farm as a watering place; plaintiff used it to water his stock in the winter time; putting in the embankment shut plaintiff off from the water; plaintiff's fences were built with reference to accommodating his stock with spring water; the land north of the railroad is in pasture running up to the barn and a wide lane runs

fifty yards south into the pasture and then under the railroad to the other pasture on the south side; the grade crossing proposed to be put in by the defendant will be inconvenient for the plaintiff's use, as he will have to drive his stock back and forth over the crossing; the trestle bridge was sixty to seventy feet long; the grade crossing will require gates, but otherwise is a good grade crossing; all plaintiff's improvements and places for keeping stock were built in order to lead to the spring; plaintiff keeps a great many cattle and calves; at times as many as a hundred head of cattle, besides horses; the spring is his watering place; horses and cattle were turned loose in the pasture and would go to the spring for water.

"Plaintiff himself testified that the spring was used in connection with the farm part of the year; his two barns on the north side of the railroad hold eighty tons of hay, besides corn; he feeds his stock from the barns and the stock use the spring for water; blocking the access to the spring will put him to the expense of digging wells; he used the crossing under the railroad for ten years or more; he had used the spring ever since he owned the farm (1867) and it had always furnished water for his stock; he built his barns and all improvements with reference to the spring, and the railroad left a bridge for him to get to it; he made his improvements so his stock could go through the trestle to the water, and the fencing and barns cost him $400 besides his own work; with the undergrade crossing he can turn his stock out to go to water; with the grade crossing some one will have to drive the stock back and forth; the farm, in his estimation, would be worth $1,000 less without the undergrade crossing; it would take half the time of a man at $20 a month to look after watering his stock; he objects to filling up the undergrade way because it will require a person to go with the stock to water.

"Dean See testified that the old crossing was more

convenient because the stock could go to water without any one watching them; whereas, if they go over the grade crossing gates will have to be opened and the crossing will be more inconvenient; plaintiff's wells will not furnish water for all his stock; ponds can be dug on the north side of the track; witness dug ponds when he lived on the Powell place, but they filled up very soon with mud.

"Henry Davis said the old crossing was more convenient than the new one for the reasons stated by the other witnesses; stock could go through it from the barns and back; the grade crossing would be about as close to the spring as the undergrade one, but the trouble is cattle would have to be driven over the grade crossing and fences changed.

"Mr. Arnold testified that there could be made a practical passageway under the railroad, walled with brick; an undergrade crossing is more desirable, as the stock is in less danger from trains. It was shown that trains passed along the railroad about every forty minutes.

"W. W. Green testified of an undergrade crossing on another farm, an arched way of brick and stone over a creek; this crossing answered as a water-drain and passageway and was about twenty feet wide; an arch of that character could be put in on plaintiff's farm and would be more convenient and advantageous than a crossing at grade.

"The defendant, to sustain the issues on its behalf, put in evidence the deed referred to above from the plaintiff to its predecessor. Defendant's only witness, James L. Saunders, testified that he was the county surveyor of Scotland county. He identified a blue print showing the location of plaintiff's farm with reference to the trestle; stated that the new crossing was on good ground, tolerably level, with approaches across the side ditches upon a level with the surface of the ground; gates had been put in; the old trestle

was about twenty-two steps long; it was liable to burn at any time in dry season; would have to be rebuilt every few years and was liable to cause train wrecks; plaintiff can construct a pond on the north side of the railroad of sufficient capacity to water a hundred head of stock, for thirty or forty dollars, and his fences can be rearranged for twenty or thirty dollars; his feed lots and barns are nearer to the new crossing than to the old; a pond will fill up in the course of time; having a spring on a farm is quite an advantage as stock can run to it. The witness said: 'A crossing [undergrade] might be made so it would be perfectly safe with an arch, and practically as safe to the railroad as in the present condition; it could be built also as a drain for water. In my judgment, as an engineer and surveyor, the undergrade crossing there could be made with practical safety to the traveling public; 'an undergrade crossing is more convenient for a farmer than a grade crossing because he does not have to open and shut gates for stock.'

"We agree with defendant's counsel that the statutes of the State do not require a railroad company to put in an undergrade private crossing merely because it will be more convenient for the proprietor of a farm adjacent to the right of way. That the statutes contemplate grade crossings is shown by their requiring gates in the right of way fences at farm crossings. [R. S. 1899, sec. 1105.] We agree, too, that the measure of a railroad company's duty in regard to constructing a crossing is prescribed by the statutes, and no more can be exacted of a company in regard to the kind of crossing it must put in than the statutes prescribe, unless there are exceptional circumstances. [Nixon v. Railroad, 141 Mo. 425.] We agree that the interest and convenience of a railroad company, as well as of adjoining proprietors, are to be taken account of in saying what sort of crossings shall be constructed and where they shall be constructed. [Birlew v. Rail-

road, 104 Mo. App. 561; Railroad v. Kregelo, 32 Kan. 608; Miller v. Railroad, 56 Mo. App. 78.] When a court passes on a case like this, it must regard all the facts, the welfare and rights of both the farmer and the company, and above all, the safety of the traveling public. [Railroad v. Chalcraft, 113 Ill. 86, 14 Ill. App. 516.] No doubt an open trestle is more of a menace to trains than a solid embankment, and we commend the action of the defendant in abandoning the use of a trestle. It is very important to the public that solid roadbeds be constructed and maintained by railroad companies. But it appears by uncontradicted testimony that an archway can be left in the defendant's embankment, so as to give access to the south side of plaintiff's farm and his spring, without in the least weakening the roadbed. No estimate was made by any witness of the cost of such structure. The only witness who testified for the defendant, James Saunders, the county surveyor, swore an undergrade crossing was feasible. He said: 'According to my judgment as an engineer and surveyor an undergrade crossing could be made with safety to the traveling public.' Hence, we may leave out of view the contention that it was necessary to have a solid earth embankment in order to insure the safety of defendant's trains and patrons.

"There is left the question of whether the defendant had the right to close the underground passageway and compel the plaintiff to use a grade-crossing in passing from one side of his farm to the other and in watering his stock. There is authority for saying that when the conditions are such as we have in the present case, a subway may be ordered when the railroad is built. [3 Elliott, Railways, sec. 1147; Beardsley v. Railroad, 20 N. Y. Supp. 458, 142 N. Y. 173; Van Wagner v. Railroad, 30 N. Y. Supp. 165.] The text-writer mentioned says it has been correctly held that when a railway company is bound to construct

farm crossings, and it appears that the track is on a high embankment and there is a natural depression through which a subway can be constructed more conveniently than a grade crossing, it will be required; citing in support of his text the cases we have cited. We concede that a person cannot acquire title to railway right of way property by adverse possession, as it is deemed public property within the meaning of a Missouri statute. [Railroad v. Totman, 149 Mo. 657.] Whether plaintiff could acquire an easement in the undergrade passage by prescription, is a question which might appropriately be decided in this case, but we think need not be. The period of adverse use necessary to give a right by prescription is ten years in this State. There is much ground for saying plaintiff holds a prescriptive right. The period in some States is twenty years, and in those States, when an adverse use for twenty years is shown, a right to a private railroad crossing is allowed. [3 Elliott, sec. 1140, and cases cited in notes.] We see no reason why the right to a subway crossing might not be obtained by prescription as well as to a grade crossing, if either is thus obtainable. No doubt in either case the right would have to be enjoyed in subordination to the railway company's right to maintain a safe roadbed and track and change the crossing whenever necessary in the interest of safety. But, as said, defendant showed by its own witness that a solid earth embankment is not essential to a safe roadbed where its trestle stood—that it may be just as safe with an arched undergrade crossing.

"In our opinion this case should be determined with respect to plaintiff's equity arising from the fact that when the railroad was first built, a subway was left for his use and he constructed his barns and fences with reference to that way. It appears that he has two barns immediately north of the track and an inclosure around them where he feeds his stock. Some

three hundred feet away and on the south side of
the track is the spring to which the stock go from the
lots about the barns to get water.   To use a grade
crossing, plaintiff will be compelled to reconstruct his
fences and barns or pay ten dollars a month to a hand
to watch his cattle as they go through the gates and
over the grade crossing to get water.   This will render
his farming operations more irksome and expensive
and his farm less valuable.   There is some testimony
that he might dig a pond on the north side of the
railroad; but this testimony is accompanied by the
statement of the witness that the pond would soon be
filled with mud.   It is apparent to any one that serious
inconvenience and considerable loss will be thrown on
the plaintiff if he is forced to do without the under-
grade way.   No testimony is before us by which we
can compare the expense he would be put to in chang-
ing his present arrangements with the expense of the
defendant in making an arched passage through the
embankment.   The railway company chose not to prove
what the cost of the undergrade passage would be,
though it was easy to prove.   We are, therefore, left
to our own judgment about the matter, which is that
the expense of constructing an arch would be much
less in the long run than the expense to the plaintiff
in using the grade crossing, to say nothing of the in-
convenience of doing so.   Now, the company's having
left a subway for the plaintiff from the first, and per-
mitted him to use it for ten or twelve years and
arrange his barns and fences with reference to it,
gives him a clear equity to have the continued use
of it, unless the damage to the defendant will be out
of proportion to the benefit to him.   The testimony
of defendant's witness Saunders explodes the theory
that a subway will be detrimental to defendant's prop-
erty or dangerous to its employees or the public.   We
think the cost of building it will not be inordinate.

215 Sup—23

"In a case quite similar to this one, but with less equity in favor of the plaintiff, a subway was ordered. The case was decided by a distinguished court along the line of reasoning we have stated. [Jones v. Seligman, 81 N. Y. 190.] The New York statute is like ours. It was ruled that a crossing under the defendant's track was necessary to allow plaintiff's horses and cattle to get water at a creek, though three crossings already existed on his farm. We quote from the opinion:

" 'The location of a crossing is to be made somewhat with reference to the needs, necessities and convenience of the owner of the farm, and he is entitled to be reasonably and fairly accommodated. The circumstances are to be considered, and the crossings should be located in view of all the surroundings, and according to the situation of the adjacent land. The railroad corporation, in the exercise of its duty in providing farm crossings, is not vested with any such absolute discretion or arbitrary power that its decision is final and conclusive and cannot be reviewed or disturbed. While under the provision of the General Railroad Act, requiring the corporation to erect farm crossings, etc., for the use of the proprietors of lands adjoining, the interest of neither party is alone controlling, the power must be exercised in a proper manner, having due regard to the convenience of the owner of the land, and without subjecting him to needless and unreasonable injury. [Wademan v. Railroad, 51 N. Y. 568.] In the case cited, where it was shown that the crossing was inconvenient for the plaintiff and not easy of access, and that the proper place for a farm crossing was at the point where the plaintiff desired it to be made, it was held that an action would lie to compel the defendant to build a suitable crossing. If the crossings made are insufficient in number, or improperly constructed, no reason exists why they should not be increased or improved so as to be

made convenient and useful. While their number or the conveniences furnished should not be unlimited, extravagant, or burdensome upon the corporation, the owner of the land is entitled, in a certain degree, to the advantages to be derived from a proper and fair exercise of this power. The nature of his rights must depend greatly upon the situation of the farm, and must be determined with a due regard to the rules already laid down. The court may decide as to the kind and character of the crossing to be constructed, its necessity, and the place where it should be located. It appears that there was an embankment at the place where the last-mentioned crossing was located, and we may infer that a crossing over the surface would be difficult, if not impracticable. The owner of the land was entitled to such a crossing as was suitable under the circumstances, and the judge, in view of the facts, had a right to direct that the crossing should be under the surface of the road. The right to a crossing under the track was a necessity if, for sufficient reasons, a construction over the surface of the road was not practicable, or would not answer the purposes intended. The principle referred to has been a subject of consideration in the courts, and the right to relief must rest in the sound discretion of the judge, and must be entirely just and equitable. [Clarke v. Railroad, 18 Barb. 350; Wademan v. Railroad, supra; Wheeler v. Railroad, 12 Barb. 227.] We think that there was no error in the findings of the court, to which reference has been had, and discover no ground for interfering with the conclusion arrived at.'

. "Beardsley v. Railroad, 20 N. Y. Supp. 458, 142 N. Y. 173, is to the same effect. An undergrade crossing was ordered in that case as necessary to the plaintiff in using his farm. The same decision was given in Van Wagner v. Railroad, 30 N. Y. Supp. 165. The Beardsley case resembles this one in the circumstances that those plaintiffs, who were farmers, had been ac-

customed to use a natural hollow in going to and from the north and south parts of their farm. Their cattle used the hollow, too, in crossing from a pasture on the south side to take water at a spring on the north. The railroad company proposed to build its road across the hollow on a dump twelve feet high, which would present a barrier to the passage of teams and cattle. The company offered to provide the plaintiffs with two grade crossings, one three hundred feet west of the depression and the other two hundred feet east. These grade crossings could not have been used by the plaintiffs without great inconvenience. Plaintiffs requested an undergrade way, but the company refused it. On consideration of the facts stated, the trial court ordered a very expensive undergrade crossing put in, delivering a careful opinion in justification of the ruling, which was adopted by the Supreme Court as a correct enunciation of the legal principles involved. That case cannot be discriminated from the one at bar easily, without the equity of the plaintiff appearing the stronger. In the New York case the railway company was building its roads and putting in crossings for the first time; whereas, the defendant has closed a subway which had existed for years, and to which plaintiff, at considerable outlay, had accommodated his farm. The doctrine of the case is that the convenience of neither the railroad company nor the adjacent proprietor is paramount in regard to where and what kind of crossings shall be built; but that the welfare of both must be taken account of and sometimes the situation of a proprietor's farm, and the topography of the land, will justify a court in decreeing an undergrade crossing. In no case we have cited did the suing party have in his favor the strong equity of the present plaintiff, conferred by his long use of the subway and the adjustment of his farm structures with reference to it.

"The point is pressed that inasmuch as the plaintiff conveyed the land for the right of way to the defendant's predecessor, it is to be presumed that he took into consideration the detriment to his farm by the construction of the road in a proper manner. But the evidence shows that defendant constructed the road so as to leave the plaintiff easy and safe access to the south side of his farm and to his spring. Moreover, it was decided in the case of Jones v. Seligman, 81 N. Y. 190, that receiving damages for right of way does not preclude an adjacent proprietor from compelling the construction of all crossings necessary for the use of the proprietor's farm. And the law is that the execution of an unconditional deed, conveying land to a railroad company, does not waive a proprietor's right to a private crossing. He may claim and enforce the crossing, notwithstanding his deed. [3 Elliott, Railways, sec. 1138; Railroad v. Ry. Commissioners, 162 Mass. 81; Smith v. Railroad, 63 N. Y. 58; Railroad v. Rowland, 70 Tex. 298.] It follows, of course, that he does not waive his right to a suitable crossing; particularly the kind originally made for and long used by him.

"No complaint is made in regard to the ruling on the instructions and we think the court recognized sound principles in those rulings. The only substantial relief granted was equitable; so the instructions are not important. In truth the findings of the jury on the issues submitted to them are not conclusive. That equity will, under proper circumstances and when there can be no adequate compensation in damages, order the construction of a private undergrade crossing, was decided in the cases we have cited. We are satisfied the plaintiff has no adequate remedy at law, that he will be subjected, if forced to use the grade crossing, to inconvenience and loss of indefinite duration and for which damages cannot be estimated easily. In view of the equity in his favor, we think

the case was correctly decided and the judgment is affirmed.''

The right that a farmer has to the establishing of a crossing, where a railroad divides his land, is given by statute and the statute itself seems to come naturally in response to a demand of right and justice. The statute is, to a considerable extent, general in its terms, leaving many details to be adjusted according to the particular situation and circumstances of the particular case, and this adjustment must be made by the court according to the dictates of an intelligent sense of justice, regarding the rights and duties both of the railroad company and those also of the land-owner. The statute has given to neither the one nor the other the right to dictate the location or manner of construction; therefore, when the parties cannot agree, the court must exercise its best judgment and decide the controversy with due regard to the rights of both. We think that the opinion above-herein copied shows that the Court of Appeals understood and appreciated the situation and correctly applied the law to the facts of the case; therefore, we adopt that opinion as the opinion of this court.

We deem it necessary only to refer to the decisions of this court with which it was thought the decision of the Court of Appeals was in conflict. Railroad v. Totman, 149 Mo. 657, was an action of ejectment in which the defendant claimed to have acquired a part of the railroad right of way by adverse possession for more than ten years, and Railroad v. Smith, 170 Mo. 327, was of the same kind, except that the land in dispute was not a part of the right of way but was land in use by the company as appurtenant to its depot. The plaintiff in this case does not seek to deprive the railroad company of any of its land or to impair its right to use the land for any purpose. The public use to which the railroad's land is devoted is the supreme use and to it all private use must yield. The Court of

Appeals does not base the plaintiff's right to the undergrade crossing on a title by adverse possession, therefore its decision is not in conflict with the decisions of this court in those two cases. Nor does the opinion, as we understand it, rest the plaintiff's claim on a prescriptive right. The court says that there is ground for holding that the plaintiff has a prescriptive right and cites authorities to that effect, but expressly says that whether so or not need not be decided in this case. The court then puts the decision on the equity and natural justice of the case. It was the duty of the railroad company, within three months after the completion of the road through the plaintiff's land, to construct a farm crossing for him. [R. S. 1899, sec. 1105; Ann. Stat. 945.] Unless the passway under the trestle was intended by the defendant as a crossing and accepted as such by the plaintiff, the defendant did not perform that duty imposed by the statute. But the evidence shows that immediately on the completion of the structure the plaintiff began using it as a crossing, and that defendant made a roadway under the trestle for the plaintiff's use and repaired it several times. There is no evidence that any express agreement was ever made between the parties to the effect that that way should be considered as the crossing required by the statute, but the situation spoke for itself, the actions of the parties spoke louder than words. Suppose while the trestle stood, the plaintiff should have concluded that he wanted a grade crossing at the point where defendant now proposes to construct one and defendant had refused to make one there saying to the plaintiff, "You already have a good crossing under the trestle and you are entitled to no other;" would any court have rendered judgment against the defendant compelling it to make the grade crossing? Certainly not, because the plaintiff already had what in reason and justice was all that was necessary. In such case under

the circumstances shown by the evidence the court would conclude that there was a tacit agreement evidenced by the way itself, the barns and fences adjusted to the situation and the long use of the under-trestle way. If the situation and the circumstances in such case would justify the railroad company in contending that that was a crossing in compliance with its duty under the statute, so they would justify the plaintiff in his claim, when the case is turned around, that that was an established crossing for his benefit as prescribed by the statute. We do not mean to imply that a crossing once established could never be changed by the railroad company; on the contrary, when the well-being of the railroad requires it, the company has the right to make a change on the principle above stated that the public use is to be considered above private convenience. Besides the cases above mentioned with which it was thought the decision of the Court of Appeals was in conflict, are Acton v. Dooley, 74 Mo. 63; Blodgett v. Perry, 97 Mo. 263; Moss v. Railroad, 85 Mo. 86; and Harrelson v. Railroad, 151 Mo. 482.

The first two of those cases declares the law on the subject of estoppel, but the plaintiff's case is not based on estoppel and therefore the law of estoppel has nothing to do with it. The last two cases decide that a railroad company has the right to make any changes in the construction of its roadbed that it deems necessary, and that proposition is not questioned. There is nothing in the decision of the Court of Appeals in conflict with the decisions in those cases.

We agree with the St. Louis Court of Appeals that the judgment of the circuit court was right and it is therefore affirmed.

All concur.